UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROBERT BELLO,                                           :
                         Plaintiff,                    :
                                                       :
v.                                                     :         **<u>OPINION AND ORDER</u>**
                                                       :
ROCKLAND COUNTY, New York; Sheriff                     :         19 CV 3514 (VB)
LOUIS FALCO, III; THOMAS SIMETI; and                   :
JOHN DOES 1–5,                                         :
                         Defendants.                   :
--------------------------------------------------------------x

<u>Briccetti, J.</u>:

Plaintiff Robert Bello brings this Section 1983 action against defendants Rockland

County, Rockland County Sheriff Louis Falco, III, Counsel to the Sheriff Thomas Simeti, and

John Does 1–5, alleging that the seizure and retention of certain firearms violated plaintiff's

Fourth and Fourteenth Amendment rights.

Now pending is defendants' motion for judgment on the pleadings pursuant to Rule

12(c).  (Doc. #27).

For the reasons set forth below, the motion is GRANTED.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion for judgment on the pleadings, the Court accepts

as true all well-pleaded factual allegations in the amended complaint, as summarized below.

At all relevant times, plaintiff resided with his mother, Lori Bello, in Rockland County,

New York, and held a valid and duly issued New York State pistol license.  Although Ms. Bello

also had a valid and duly issued New York State pistol license, her license lapsed on January 31,

2018, pursuant to the New York SAFE Act recertification requirement.

1

The SAFE Act requires existing licensees to recertify their licenses on or by January 31, 2018, and every five years thereafter.  Pursuant to the SAFE Act, "Failure to recertify [one's pistol license] shall act as a revocation of such license."  N.Y. Penal Law § 400.00(10)(b).

Lori Bello failed to recertify her pistol license on or before January 31, 2018.  Thus, her license was revoked.  At the time of revocation, Ms. Bello had ten registered handguns listed on the back of her pistol license.  Plaintiff alleges those ten guns were registered to, and also listed on, the back of his pistol license.  Plaintiff claims the guns were in his "sole and exclusive possession, ownership, and custody."  (Doc. #21 ("Am. Compl.") ¶ 30).

On November 1, 2018, Hon. Thomas E. Walsh, II, a Justice of the New York State Supreme Court, issued Lori Bello a "Notice of Suspension & Order to Surrender Weapons" (the "Surrender Order").  (Doc. #28 ("Weissman Decl.") Ex. B).  According to the amended complaint, the Surrender Order was precipitated by "a report about Lori Bello to the Division of Criminal Justice Services" pursuant to Section 9.46 of the New York Mental Hygiene Law.  (Am. Compl. § 38).  The Surrender Order stated that, in accordance with Section 9.46, Ms. Bello's pistol permit was suspended, and directed that she "turn in all weapons you own or co-own and/or which are listed on your permit **immediately** to the Rockland County Sheriff's Department within forty-eight (48) hours."

When a person's license is suspended or revoked pursuant to Section 9.46 of the Mental Hygiene Law:

> [S]uch person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency . . . .  In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.

N.Y. Penal Law § 400.00(11)(c).

On November 2, 2018, Rockland County Sheriff's Deputies (John Does 1–5) allegedly arrived at the home plaintiff shared with Lori Bello.  Plaintiff alleges Ms. Bello told the officers that her pistol license had expired, she did not own or possess handguns, and the handguns on her pistol license belonged to plaintiff and were stored in a safe to which only plaintiff had access.  Plaintiff claims the officers instructed Ms. Bello to tell plaintiff to come home to open the safe so that the officers could seize the guns.  Plaintiff alleges the officers seized the guns even though he told them he was the sole owner and possessor of the guns.  According to plaintiff, the seizure was "without a warrant, without consent, without probable cause."  (Am. Compl. ¶ 62).

Plaintiff also alleges that sometime after the November 2, 2018, seizure, he contacted the Rockland County Sheriff's Department to seek the return of the guns.  He claims defendants refused to return or release the guns, and that a "detective in the property section of the Sheriff's Office indicated that he could not return Mr. Bello's property to him because of the policies, customs, and procedures established, enacted, and enforced by Sheriff Falco and Thomas Simeti."  (Am. Compl. ¶ 68).

Plaintiff further alleges that on December 8, 2018, he made a second attempt, this time through his attorney, to regain possession of the firearms.  In a letter to Sheriff Falco, plaintiff's attorney stated each of the guns seized by law enforcement "are owned solely by Robert J. Bello, as indicated on the attached New York State Pistol License."  (Weissman Decl. Ex. C).  Counsel also provided a sworn declaration from plaintiff, attesting to the fact that the guns were his and his alone.  Plaintiff's attorney requested the Sheriff's Department "schedule a time for Mr. Bello to pick up his firearms."  (Id.).

By letter dated January 18, 2019, Simeti, on behalf of Sheriff Falco, replied to plaintiff's counsel's letter. Simeti wrote:

> [T]he Order directed Lori Bello "to turn in all weapons [she] <u>own[s]</u> or <u>co-own[s]</u> and/or which are listed on [her] permit **immediately** to the Rockland County Sheriff's Department within forty-eight (48) hours." . . . Pursuant to the Order, Lori Bello surrendered all of the weapons identified on her pistol permit to the Sheriff's Office. In this regard, on this date, I have confirmed with the Pistol Clerk that the Order has not expired or been vacated, modified or superseded by a subsequent Order from Justice Walsh.
>
> Consequently, upon our review, there is a legal and/or factual impediment for the Sheriff's Office to return these weapons to Robert J. Bello.

(Weissman Decl. Ex. F) (second, third, and fifth alterations in original).

According to plaintiff, as of the date of filing the amended complaint, the ten handguns remain in the possession of the Rockland County Sheriff's Department.

## DISCUSSION

I.     <u>Standard of Review</u>

At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Rule 12(c). <u>See</u> <u>Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC</u>, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 520 (2d Cir. 2006).[1]

In either case, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of

---

[1]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

In evaluating a Rule 12(c) motion, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).

Here, defendants submitted exhibits in support of the motion—arguing such exhibits were incorporated into the amended complaint by reference—and plaintiff submitted exhibits in opposition to the motion.  The Court considers five documents upon which the amended complaint heavily relies, the accuracy and authenticity of which are not in dispute:  the complaint in Cocuzza v. Rockland County, et al., 17 CV 8217 (KMK) (Weissman Decl. Ex. G); relevant portions of the deposition transcript of Sheriff Falco in the Cocuzza case (Doc. #33 ("Bellantoni Decl.") Ex. 1; Weissman Decl. Ex. H); the Surrender Order (Weissman Decl. Ex. B); plaintiff's counsel's December 8, 2018, letter to Sheriff Falco and accompanying declaration from plaintiff (Weissman Decl. Ex. C); and Simeti's January 18, 2019, response to the December 8 letter (Weissman Decl. Ex. F).

II.    Due Process Claims

Defendants Falco and Simeti argue the Court should grant them judgment on the pleadings on plaintiff's post-deprivation violation of due process claim.[2]

---

[2]    In plaintiff's opposition to the motion to dismiss, plaintiff abandons his claim respecting defendants' initial seizure of the firearms.  (See Doc. #32 ("Pl. Mem.") at 1) ("The issue is not

The Court agrees.

The Fourteenth Amendment commands that no "State shall . . . deprive any person of . . . property, without due process of law."  U.S. Const. amend. XIV, § 1.

    A.    <u>Substantive Due Process</u>

To state a substantive due process claim, a plaintiff must allege the complained-of state action compromised a constitutionally protected liberty or property right, and the state action that deprived plaintiff of that interest was oppressive or arbitrary.  <u>MC v. Airlington Cent. Sch. Dist.</u>, 2012 WL 3020087, at *5 (S.D.N.Y. July 24, 2012).  The allegations must demonstrate more than mere conduct that is incorrect or ill advised.  <u>Cunney v. Bd. of Trs. of Grand View</u>, 660 F.3d 612, 626 (2d Cir. 2011).  Indeed, substantive due process "is the right to be free of arbitrary government action that <u>infringes</u> a <u>protected right</u>."  <u>O'Connor v. Pierson</u>, 426 F.3d 187, 200 n.6 (2d Cir. 2005) (emphasis in original).

The plaintiff must also plausibly allege that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  <u>Matican v. City of New York</u>, 524 F.3d 151, 155 (2d Cir. 2008).

Here, to the extent plaintiff alleges Falco and Simeti's retention of the firearms constitutes a substantive due process violation, that claim must be dismissed.  In his amended complaint, plaintiff acknowledges the government's action was not arbitrary, as he concedes Lori Bello's pistol license had expired and the seized firearms were listed on her license.  Moreover, plaintiff does not challenge the existence of Justice Walsh's Surrender Order, but rather its effect.  Further, as a general matter, the seizure and retention of firearms is neither extreme nor

---

whether the government's initial possession of the property was lawful; plaintiff is not challenging the initial possession of the firearms.").

outrageous.  Accordingly, to the extent plaintiff's Fourteenth Amendment post-deprivation claim suggests the derogation of substantive due process, the claim must be dismissed.

      B.    <u>Procedural Due Process</u>

To evaluate a procedural due process claim, the Court conducts a two-step inquiry, asking:  (1) whether the plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest.  <u>See</u> <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002).

"The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'"  <u>Spinelli v. City of New York</u>, 579 F.3d 160, 169 (2d Cir. 2009) (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 348–49 (1976)).  Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>Dusenbery v. United States</u>, 534 U.S. 161, 168 (2002).  Notice "must set forth the alleged misconduct with particularity," although "[t]he particularity with which alleged misconduct must be described varies with the facts and circumstances of the individual case."  <u>Spinelli v. City of New York</u>, 579 F.3d at 172.

To provide constitutional due process, law enforcement agencies are not required to provide to property owners seeking the return of lawfully seized property detailed and specific instructions on available state law remedies.  <u>See</u> <u>City of W. Covina v. Perkins</u>, 525 U.S. 234, 241 (1999).  Individuals have a responsibility to educate themselves about the law.  Indeed, "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny."  <u>Atkins v. Parker</u>, 472 U.S. 115, 131 (1985).  State law remedies "are established by published,

generally available state statues and case law."  City of W. Covina v. Perkins, 525 U.S. at 241.

"Once the property owner is informed that his property has been seized, he can turn to these

public sources to learn about the remedial procedures available to him."  Id.

Here, plaintiff plausibly alleges a property interest in the guns that the Sheriff's

Department seized and retained.  See Panzella v. Sposato, 863 F.3d 210, 218 (2d Cir. 2017), as

amended (July 18, 2017) ("there is no dispute that Panzella has a property interest in her

longarms and that the County's retention of her longarms affected that interest").

However, plaintiff's claim fails on the second prong of the procedural due process

inquiry because there was process available to plaintiff that he opted not to pursue.

Due process does not require defendants, upon learning of plaintiff's ownership interest

in the firearms, to give plaintiff some additional process or return the guns while the Surrender

Order remains in effect.  Nor does due process require defendants to explain to plaintiff what he

could do to get the guns back.  See City of W. Covina v. Perkins, 525 U.S. at 241.

As noted above, plaintiff no longer challenges the initial seizure of the firearms.  (See Pl.

Mem. at 1).  At the time the firearms were seized, plaintiff had notice of the Surrender Order.

Instead of seeking to have the order vacated—which plaintiff, in concert with his mother Lori

Bello, could have done—plaintiff asked the Sheriff's Department to return the guns.  The

Sheriff's Department told plaintiff it would not return the guns while a valid Surrender Order

remained in place.  Indeed, Simeti wrote to plaintiff's attorney on January 18, 2019, and

explained that the Sheriff's Department was not returning the firearms because Simeti

"confirmed with the Pistol Clerk that the Order has not expired or been vacated, modified or

superseded by a subsequent Order from Justice Walsh."  (Weissman Decl. Ex. F).  Plaintiff could

have sought relief from Justice Walsh or from a State appellate court.  Instead, plaintiff took his

gripe to the Sheriff's Department, which was not in a position to overrule a validly issued order.

Further, the reason defendants confiscated the guns had not changed.  Lori Bello's pistol

license expired, and when it did, the ten guns the Sheriff's Department seized were still listed on

the license.  Moreover, Ms. Bello was the subject of a report pursuant to Section 9.46 of the

Mental Hygiene Law, which led to the Surrender Order.  Plaintiff knew the Sheriff's Department

seized the guns, and why.  Plaintiff also knew to whom he could appeal to get the guns back.

But plaintiff took no steps to invalidate Justice Walsh's Surrender Order.  Due process demanded

no more.  Cf. Panzella v. Sposato, 863 F.3d at 217.

Accordingly, defendants are entitled to judgment on the pleadings as to plaintiff's

Fourteenth Amendment procedural due process claim.

III.    Fourth Amendment Claim

Defendants Falco and Simetti argue plaintiff's Fourth Amendment claim should be

dismissed because the Fourth Amendment does not protect against the government's failure to

return lawfully seized property.

The Court agrees.

The Fourth Amendment prohibits unreasonable seizures.  "A seizure occurs when there is

some meaningful interference with an individual's possessory interest in his or her property."

United States v. Jacobsen, 466 U.S. 109, 113 (1984).  However, when an individual consents to

the surrender of property after an officer's lawful entry, such a seizure is reasonable.  Kaminsky

v. Schriro, 760 F. App'x 69, 72 (2d Cir. 2019) (summary order).

Furthermore, the government's failure to return lawfully seized property is not an

unreasonable seizure under the Fourth Amendment.  Shaul v. Cherry Valley-Springfield Cent.

Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004).  In other words, the government's continued retention of property does not constitute an additional seizure or transform a lawful seizure into an unlawful one.  Malapanis v. Regan, 335 F. Supp. 2d 285, 291 (D. Conn. 2004) (citing Fox v. Van Oosterum, 176 F.3d 342, 351 (6th Cir. 1999)).

Here, plaintiff has abandoned his claim that the initial seizure of the firearms was unlawful.  (See Pl. Mem. at 1).  Therefore, under well-settled Circuit precedent, plaintiff has no Fourth Amendment claim against defendants for retaining the lawfully seized guns.  See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d at 187.

For the above reasons, plaintiff cannot plausibly state a Fourth Amendment claim respecting the seizure and retention of the firearms.

IV.     Quasi-Judicial Immunity

Falco and Simeti further argue they are entitled to quasi-judicial immunity because they were acting pursuant to a valid order issued by Justice Walsh.

The Court agrees.

The Supreme Court has held that "state judges are absolutely immune from liability for their judicial acts."  Briscoe v. LaHue, 460 U.S. 325, 334 (1983).  The Supreme Court "has extended absolute immunity to certain others who perform functions closely associated with the judicial process," Cleavinger v. Saxner, 474 U.S. 193, 200 (1985)—i.e., to those who perform "quasi-judicial" functions.  Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F. Supp. 2d 357, 365 (S.D.N.Y. 2011).

To qualify for quasi-judicial immunity, "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."  Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993).

[T]he touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.  When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function.

Id. at 435–36.

"The applicability of quasi-judicial immunity is determined by considering not the identity of the actor but rather the nature of the functions the actor performs." Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F. Supp. 2d at 365 (citing Austern v. Chi. Bd. Options Exch., Inc., 898 F.2d 882, 885 (2d Cir. 1990)).  "In applying this 'functional' approach, a court must consider the following factors to determine whether a particular individual is entitled to quasi-judicial immunity:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Cleavinger v. Saxner, 474 U.S. at 202; accord Gross v. Rell, 585 F.3d 72, 88 (2d Cir. 2009).

Under New York County Law § 650, "[t]he sheriff shall perform the duties prescribed by law as an officer of the court."  One such duty of the Sheriff as an official of the court is to carry out the mandates of the court.  Tornheim v. Eason, 363 F. Supp. 2d 674, 676–77 (S.D.N.Y. 2005), aff'd, 175 F. App'x 427 (2d Cir. 2006) (summary order).  New York General Construction Law § 28–a defines "mandate" to include:  "A writ, process or other written direction, issued pursuant to law . . . by a . . . judge . . . and commanding . . . an officer . . . named or otherwise designated therein, to do . . . an act therein specified."  In addition, N.Y. C.P.L.R. § 2223 states that an "officer to whom a mandate is given to be executed shall . . . execute the mandate according to its command."  "Accordingly, when a sheriff executes a

facially valid court order, he is 'afforded complete protection from liability . . . for any proper act done in its execution.'" Tornheim v. Eason, 363 F. Supp. 2d at 676–77 (quoting Iovinella v. Sheriff of Schenectady Co., 67 A.D.2d 1037 (3d Dep't) app. denied 47 N.Y.2d 707 (1979)); see also Maldonado v. New York County Sheriff, 2006 WL 2588911, at *3 (S.D.N.Y. Sept. 6, 2006) (collecting cases).

Defendants John Does seized, and defendants Falco and Simeti retained, the firearms listed on Lori Bello's pistol license pursuant to a facially valid Surrender Order issued by Justice Walsh. Consequently, the defendants are entitled to absolute quasi-judicial immunity.

Plaintiff's argument that Justice Walsh was acting as a pistol licensing officer, rather than a state court judge, is not persuasive. As defendants correctly point out, the pertinent statute states that in Rockland County, a "licensing officer" is "a judge or justice of a court of record having his office in the county of issuance." N.Y. Penal Law § 265.00(10). Moreover, the Surrender Order is on official letterhead. There is nothing in the Surrender Order to suggest Justice Walsh was not acting as an officer of the court when it was issued.

As an additional matter, the fact that the Sheriff's Deputies seized the weapons prior to the expiration of the forty-eight-hour window for surrender is of no moment. This is because plaintiff does not challenge the initial seizure of the firearms. (See Pl. Mem. at 1).

Accordingly, the individual defendants are protected by absolute quasi-judicial immunity because they were acting pursuant to an order of a New York state court judge.

V.    Monell Claim

Because plaintiff has not adequately pleaded an underlying violation of his constitutional rights, his claim against Rockland County pursuant to Monell v. Dep't of Soc. Servs., 436 U.S.

658 (1978), must be dismissed.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.

2006).

   Moreover, any allegations respecting a policy or practice violative of the Second, Fourth,

or Fourteenth Amendments that was at issue in the Cocuzza case are inapposite.  In that case, the

plaintiff alleged Rockland County and Sheriff Falco refused to return his firearms after a

temporary order of protection respecting the firearms had been vacated.  (Weissman Decl. Ex. G

¶ 25).  Further, and more importantly, the policy plaintiff that alleges is unconstitutional here—

that the Sheriff's Department would "take the weapons in for safekeeping until such time that an

Article 78 was received by the department to return said weapons"—which was at issue in

Cocuzza, is no longer the policy or process in Rockland County.  (Bellantoni Decl. Ex. 1 at 21,

24, 25; Weissman Decl. Ex. H at 26).  For this additional reason, plaintiff fails sufficiently to

allege a Monell claim against Rockland County.

VI.   Leave to Amend

   Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely

give leave" to amend a complaint "when justice so requires."  However, leave to amend may

"properly be denied for . . . 'futility of amendment.'"  Ruotolo v. City of New York, 514 F.3d

184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "An amendment

to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to

[Rule] 12(b)(6)."  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002)

(addressing futility of amendment under same standard applicable to dismissals pursuant to Rule

12(c)).

   The amended complaint contains no allegations suggesting plaintiff has an actionable

federal claim against any defendant that he "inadequately or inartfully pleaded" and "should

therefore be given a chance to reframe." See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000).  The problems with plaintiff's claims are substantive, and better pleading will not cure

them.  Moreover, plaintiff, who is represented by counsel, has already had an opportunity to

amend his pleading, and did so, following receipt of the defendants' original motion to dismiss,

which was substantively similar to the instant motion.  Nevertheless, the problems with

plaintiff's pleading persist.  For these reasons, further amendment would be futile.

## CONCLUSION

The motion for judgment on the pleadings is GRANTED.

The Clerk is directed to terminate the motion (Doc. # 27) and close this case.

Dated:   May 11, 2020
         White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United §States District Judge